Good morning, Your Honors. May it please the Court, Omar Krashna for Appellant, Ronald Dumas. I can largely submit on the arguments in authority recited in our brief. However, I'd like to raise a few salient points of our argument today. With regard to our race discrimination claim, we maintain that an overly restrictive criterion was applied here as it applied to the fourth prong of the so-called McDonnell-Douglas test. We assert that Appellant may make a prima facie showing based on evidence of racial animus, including evidence of discrimination towards other employees. That argument, of course, would refer to the declaration provided by Patrick Turner, who was a similarly situated employee who pointed to his own hostile experiences and racist treatment at the hands of one of the parties in this case, and that would be Manuel Valdez. Appellant, Mr. Dumas, has also provided his own testimonial and tribal evidence with regard to non-union employees demonstrating animus toward him as well as other individuals. And Mr. Dumas has experienced this and witnessed this in his own role as a union representative at NUMMI. Such circumstances raise inferences that are allowed under the standards we've argued and provided for in our brief. What was the relationship that Salvera had to the termination? What's the evidence of that? Well, Salvera was, I believe, a team leader. And as Mr. Dumas has stated, I guess, in deposition and otherwise, he was a cohort of Mr. Valdez. And as Mr. Dumas' testimony in this matter, that the two of them had often, to not invoke a legally operative word, term, conspired between themselves and bullied them often. Right. But in these employment cases, the end of the line is, you know, you can have bad colleagues. But who is the person in charge of making your employment decision? So is there any specific evidence that he was involved in the actual employment decision? Salvera? Yes. I don't believe so, Your Honor. I believe the actual action was emanated from Mr. Valdez. Yes. So to answer your question pointedly, that would be our response. Thank you. With regard to retaliation, the district court correctly found that Mr. Dumas had established a prima facie case when they fired him. Would you just stop for one second? Maybe I could ask Judge Fletcher to mute your microphone unless you're speaking because we're getting a feedback again. Thank you. Go ahead. Okay. Your Honor, however. No, I'm not getting as clear a voice as we had yesterday. I don't know what the problem is. All right. We'll also have somebody check on that. Thank you. Despite the fact we believe the district court was correct in finding that Mr. Dumas had established a prima facie case for retaliation, we believe the court incorrectly found that he hadn't established the pretextual basis. And again, we refer to Mr. Turner's own experiences as well as Mr. Dumas's testimonial evidence in that regard. And the authority that we've cited, Your Honors, supports the fact that we can raise these circumstantial experiences of Mr. Turner to raise the inference to survive the MSJ motion. Excuse me, the MSJ. So we believe in that regard. Mr. Turner didn't get terminated, right? No. Okay. No. However, he has a long history of problems with his grievances and complaints not being handled by Mr. Valdez and other representatives of the NUMMI hierarchy. With regard, again, Your Honor, to the circumstantial issue, I can directly refer to the statements, excuse me, our brief at page 16, where it's stated in the United States Postal Service Board of Governors v. Akins, as a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent, recognizing that there will seldom be eyewitness testimony as to the employer's mental processes. So, yes, there was some significant reliance on Mr. Turner and his experiences. However, we believe that based on his statements and his own experiences, there's enough circumstantial evidence there to raise trialable issues to have the case proceed with the district court. So I'm going to reserve the rest of my time for rebuttal. Thank you. Good morning, Your Honor. May it please the Court, Camille Dawson on behalf of New United Motor Defendant and Appellee. Your Honors, in regard to this case, the underlying issue here, or the overarching issue here, is that appellant failed to produce any significant probative evidence of race discrimination or retaliation at the motion for summary judgment stage. In regard to the race discrimination claim, the specific issue was whether he established a prima facie case of race discrimination. Specifically, he asserts that the district court, Judge Hamilton, was erroneous in applying the standard under McDonnell Douglas, the fourth prong of it. What is interesting is that nowhere in his papers, nowhere in his argument was a standard even delineated. So for him now to come and say that the standard was misapplied is questionable. But in doing so, if we look at the standard that was applied, the last standard is that other circumstances of discrimination can be looked at. The standard that was applied by Judge Hamilton, and that was asserted in our papers, was that there must be significant evidence showing that similarly situated non-African Americans were treated more favorably than Mr. Dumas. There was no evidence that was put forth by Mr. Dumas to suggest that he was treated differently. This is a disparate treatment case, not a disparate impact case. It's a single plaintiff case. So in regard to his submission of the Turner Declaration, which was riddled with hearsay and speculation, it was not probative of the issue of whether Mr. Dumas was treated differently than a non-African American in terms of the reasons for his termination. His failure to call in to work for six consecutive days without a leave of absence in violation of the collective bargaining agreement. Judge Hamilton got it right. There was no evidence that was no competent evidence, I'll say that, no admissible competent evidence. And that's the standard, that there must be substantial probative evidence to satisfy the prima facie burden. But even if they did satisfy the prima facie burden, or the prima facie case, if they did that, it doesn't stop there. McDonnell Douglas outlines a three-step process. So they get past prima facie case. It is then our burden, the defendant's burden, to establish a legitimate business reason for the termination. We did that, hands down, with the evidence that was submitted, that he violated the collective bargaining agreement, and he knew what the rules were. He had applied for a leave of absence in the past, and he had called in for his own sickness, but didn't follow the rules. So he was terminated. That was not opposed. Counsel, what do we do with the fact that in the board proceedings he was reinstated and got back pay? Does that mean that there was not a legitimate reason for having discharged him, that because of his son's asthma, that he followed the rules appropriately? So what do we do with that? Well, Your Honor, the fact that he got reinstated was a factor of a settlement. It was a negotiated settlement between the union and the company. We settle cases all the time with no admission of liability. The reasoning regarding his son's asthma came up as an after effect after his termination. Even that information was not submitted at summary judgment in opposition to our summary judgment motion. But looking at that, the company had his version of the story regarding calling in for work. He called in for his own sickness on five occasions. It was not until after he was terminated that he then says, oh, by the way, it really wasn't my sickness, it was my son's sickness. At that point, the company has a decision to make. Case law says that even if the company is wrong, it doesn't negate the legitimate business reason for the decision. Turning to the retaliation claim, Mr. Dumas has alleged that he satisfied the prima facie case for retaliation. Taking that as it is, we move on to whether there was a legitimate business purpose, legitimate business reason. Again, there was. Judge Hamilton saw that. Going to pretext, there was absolutely no mention of pretext in the opposition papers. There was no evidence talking about pretext. The word pretext wasn't used at all. But if we look at it, there was no pretext. Again, turning to the Turner Declaration, it was riddled with hearsay and speculation. It was not probative of the issue of why or how Mr. Dumas was terminated. Mr. Turner, as the Court has pointed out, was not terminated. Manuel Valdez and his experiences with Mr. Turner, according to Mr. Turner's Declaration, was during a period of time when Manuel Valdez was a group leader. This was years before Mr. Dumas dealt with him as a team member relations person. A group leader, there's a production team. There's a group leader, a team leader, and a team member. The group leader is a part of management that oversees the team. At that time, that's when Mr. Turner was dealing with Manuel Valdez as a group leader. Later on, Mr. Valdez became a team member relations representative. That's an HR rep. So there was no supervisory role over Mr. Dumas when Mr. Valdez was dealing with him. When there is an issue at NUMMI, the team member, like Mr. Dumas, is afforded a union representative in a meeting. That meeting is also attended by a management person, such as Mr. Valdez as a team member relations person. So that relationship was not the same as the relationship with Mr. Turner. In that regard, they were not similarly situated. The allegations that Mr. Turner makes in his Declaration have nothing to do with Mr. Dumas. They don't even tell us what the timeframe is. Salvera had nothing to do with Mr. Dumas's termination. Mr. Dumas doesn't even mention him in the text, in the entire text of the lawsuit. I'll conclude by saying that the crux of this lawsuit or this argument is that Mr. Dumas failed to carry his burden. The burden is with the plaintiff at all times. On his motion for summary judgment, he failed to produce any competent admissible evidence to support his claims for retaliation or race discrimination. He waived all other claims, including wrongful termination, violation of the California Family Rights Act, punitive damages. He didn't even address the fee award that was provided or that was ordered by the court. Thank you, Your Honor. Your Honor, with regard to counsel's claim of legitimate business reason, it's undisputable that Mr. Dumas appealed to the Department of Labor to intervene in the employment grievance. And through his efforts with the Department of Labor, he was reinstated. I don't believe the record shows a negotiation period, certainly not with his union. So if indeed he was legitimately released, terminated, why was he returned? He was a good employee, that's why. What would be the other basis? He and Manuel Valdez had a hostile relationship. And that was, despite the fact that counsel represents Mr. Valdez as not having a supervisory role, that's counter to their relationship. Mr. Valdez consistently directed Mr. Dumas at work. He's the one who made the referral for firing. He's the one who handed him the termination letter. So that representation I believe is not accurate. And again, Your Honor, I would like to assert that Patrick Turner experienced analogous circumstances to Mr. Dumas at the hands of the same individual. And that's where we hang our hat as far as the inference of racial animus. Mr. Turner worked for about the same period of time as Mr. Dumas at NUMMI, and his claims as recited in his declaration mirror Mr. Dumas' claims, quite analogous. And on that, Your Honor, appellant will submit.  Thank you.
judges: Fletcher, McKeown, Gorsuch